UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF WISCONSIN

---

In re:                                                                              Case Number: 17-10248-13

    ANNETTE SUE MANOR,

        Debtor.

---

## MEMORANDUM DECISION

This matter is before the Court on the objection of the Debtor, Annette Sue Manor ("Manor"), to the Proof of Claim of Members Cooperative Credit Union (the "Credit Union"). Manor seeks to reduce the secured claim by certain amounts she believes should not be included in the claim as purchase money amounts securing the claim.

## FACTS

On October 7, 2016, Manor purchased a new Dodge Ram vehicle (the "Dodge"). The price of the Dodge was $43,176.00. She traded in a Chevrolet Silverado (the "Silverado") for the purchase. She owed more on the Silverado than its trade-in value, resulting in negative equity of $6,343.65. Instead of paying off the loan on the old car, Manor had the negative equity included in the financing of the Dodge. The negative balance, GAP insurance, a service contract, and taxes were added to the purchase price for the Dodge, resulting in total financing of $44,892.56 after deducting the trade-in and cash down payment.

Manor filed a voluntary Chapter 13 on January 30, 2017. The Credit Union filed Proof of Claim No. 7 asserting a claim in the amount of $44,006.96.

There is no dispute this is the total amount due the Credit Union. Manor and the Credit Union agree the Dodge was purchased within 910 days of the date of the filing of Manor's bankruptcy. The parties agree the value of the Dodge is $29,500.00.

## DISCUSSION

The issue in this case is whether Manor can cramdown the value of the Credit Union's collateral to its value or, alternatively, whether the secured claim of the Credit Union can be reduced by the amounts of the negative equity, GAP insurance, service contract, and taxes that were financed by Manor.

Numerous courts have wrestled with this issue reaching an array of divergent results. However, in 2010, the Seventh Circuit joined the Second, Fourth, Fifth, Eighth, Tenth, and Eleventh Circuits[1] in concluding that a purchase money security interest in a vehicle includes negative equity. *Howard v. AmeriCredit Fin. Servs. (In re Howard)*, 597 F.3d 852, 858 (7th Cir. 2010). Since the Seventh Circuit's ruling in *Howard*, the Sixth Circuit has also joined the majority of circuit courts in finding a purchase money security interest in a vehicle includes negative equity. *See Nuvell Credit Corp. v. Westfall (In re Westfall)*, 599 F.3d 498, 503 (6th Cir. 2010).

---

[1] *Reiber v. GMAC, LLC (In re Peaslee)*, 585 F.3d 53, 57 (2d Cir. 2009) (per curiam); *Wells Fargo Fin. Acceptance v. Price (In re Price)*, 562 F.3d 618, 624-29 (4th Cir. 2009); *Ford Motor Credit Co., LLC v. Dale (In re Dale)*, 582 F.3d 568, 573-75 (5th Cir. 2009); *Ford Motor Credit Co. v. Mierkowski (In re Mierkowski)*, 580 F.3d 740, 742-43 (8th Cir. 2009); *Ford v. Ford Motor Credit Corp. (In re Ford)*, 574 F.3d 1279, 1283-86 (10th Cir. 2009); *Graupner v. Nuvell Credit Corp. (In re Graupner)*, 537 F.3d 1295, 1300-03 (11th Cir. 2008).

11 U.S.C. § 1325(a) authorizes cramdowns in Chapter 13 bankruptcies. *In re Howard*, 597 F.3d at 854. Prior to the enactment of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"), the Bankruptcy Code generally allowed Chapter 13 debtors to modify the rights of a secured creditor holding a purchase money security interest in a vehicle by bifurcating the creditor's claim into secured and unsecured portions. The secured amount was determined based on the vehicle's fair market value on the petition date. The balance was then classified as an unsecured claim. *See* 11 U.S.C. §§ 506(a)(1), 1325(a). After bifurcating the claim, the debtor could treat the secured and unsecured portions separately in accordance with the priority scheme established by the Code. This process, known as "cramdown," essentially permitted a debtor to strip a secured creditor's lien down to the value of the collateral, with the remaining balance receiving payment on a pro-rata basis as an unsecured claim pursuant to the terms of the plan.

Congress amended the Code to prevent cramdown of certain secured consumer debts. Relevant to this case is a section added in BAPCPA referred to as the "hanging paragraph." It states:

> For purposes of paragraph (5), section 506 shall not apply to a claim described in that paragraph if the creditor has a purchase money security interest securing the debt that is the subject of the claim, the debt was incurred within the 910-day period preceding the date of the filing of the petition, and the collateral for that debt consists of a motor vehicle (as defined in section 30102 of title 49) acquired for the personal use of the debtor . . . .

11 U.S.C. § 1325(a).

The restrictions created by this provision preclude bifurcating a secured debt incurred within the 910 days prior to bankruptcy into secured and unsecured portions based on the value of the vehicle. Where the debtor seeks to retain the vehicle, a creditor whose claim meets the four criteria set forth in the hanging paragraph—(1) the creditor holds a purchase money security interest, (2) the debt was incurred within 910 days of filing, (3) the collateral consists of a motor vehicle, and (4) the debtor acquired the vehicle for his/her personal use—receives protection from bifurcation and cramdown.

It is undisputed that (1) the Credit Union financed the purchase of the Dodge, (2) the Dodge was purchased within 910 days of the filing of Manor's petition, (3) the collateral is a vehicle, and (4) Manor acquired the Dodge for personal use. Thus, the restriction from the hanging paragraph applies and Manor cannot bifurcate the Credit Union's claim. The remaining issue to be addressed is whether the inclusion of negative equity, taxes, the service contract, and insurance are to be included in the secured claim for the purposes of section 1325(a).

Including negative equity in the purchase price of a vehicle is "often necessary to enable the purchase of the car . . . ." *In re Howard*, 597 F.3d at 857. "Negative equity" is a well-established fact of life in auto financing. Approximately one-third of the car sales in America involve a trade-in vehicle with a negative equity balance. *AmeriCredit Fin. Servs. v. Penrod (In re Penrod)*, 611 F.3d 1158, 1162 (9th Cir. 2010) (citing *In re Howard*, 597 F.3d at 857-58).

To decide this issue, the Court must analyze the definition of "purchase money security interest" under Wisconsin law. Revised Article 9, Section 9-103, as enacted in Wisconsin, including the Official Comments, provides that "[a] security interest in goods is a purchase-money security interest" to the extent it "secures a purchase-money obligation incurred with respect to that collateral." Wis. Stat. § 409.103(1). The section continues to explain that a purchase money obligation is an "obligation . . . incurred as all or part of the price of the collateral or for value given to enable the debtor to acquire rights in or the use of the collateral if the value is in fact so used." The Comments make clear that expenses incurred in connection with acquiring rights in the collateral, including sales taxes and other similar obligations, are part of the price because they enable the purchase. Additional expenses, fees, and other charges also are treated as purchase money if there is "a close nexus between the acquisition of collateral and the secured obligation." Wis. Stat. § 409.103 cmt. 3.

The Wisconsin Retail Installment Sales statute specifies that the sale agreement should describe the cash sale price, cash paid down, the amount of credit for the trade-in, the cost of any insurance, the amount financed including taxes, and any other charge. Wis. Stat. § 218.0142(2)(a). Each of these items was detailed in the Motor Vehicle Consumer Simple Interest Installment Sale and Security Agreement.

The Credit Union financed the negative equity, taxes, insurance, and service contract precisely so that Manor could purchase the vehicle. The

inclusion of those amounts enabled her to obtain the vehicle and qualifies as "value given to enable" the purchase. The negative equity and other charges all meet the "price" and "value given to enable" requirements of the purchase-money security interest definition. *See Howard*, 597 F.3d at 857-58. The negative equity and other charges also bear a close nexus between the acquisition of the Dodge and the secured obligation. The lien on the trade-in was released as part of the transaction, thus permitting its value to be applied against the purchase price. That further made completion of the purchase of the Dodge possible. *In re Graupner*, 537 F.3d at 1302. Accordingly, under Wis. Stat. § 409.103 and the Seventh Circuit's decision in *Howard*, the negative equity enabled Manor to purchase the Dodge and may not be crammed down.

## CONCLUSION

The inclusion of taxes, insurance, and a service contract together with the use of negative equity financing by the parties in connection with the purchase and sale of the new car does not destroy or reduce the purchase money nature of the security interest. The Credit Union holds a purchase money security interest for the full amount due it from Manor and is protected against cramdown by virtue of the hanging paragraph.

The Debtors' objection to the Credit Union's proof of claim is OVERRULED. An order consistent with this decision will be entered.

This decision shall constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052 and Rule 52 of the Federal Rules of Civil Procedure.

Dated: June 27, 2017

BY THE COURT:

_____
Catherine J. Furay
U.S. Bankruptcy Judge